# EXHIBIT A

FILED
6/17/2021 11:46 PM
Mary Angie Garcia
Bexar County District Clerk
Accepted By: Krystal Torres

Case 5:21-cv-00741-FB   Document 1-1   Filed 08/04/21   Page 2 of 12
CIT PPS

CAUSE NO. **2021CI12217**

| | | |
|---|---|---|
| **LORENZO VILLARREAL,** § | | **IN THE DISTRICT COURT** |
| *Plaintiff,* § | | |
| § | | Bexar County - 131st District Court |
| *V* § | | _____ **JUDICIAL DISTRICT** |
| § | | |
| **ALAMO COLLEGES DISTRICT,** § | | |
| *Defendant.* § | | **BEXAR COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL PETITION

### TO THE HONORABLE JUDGE OF SAID COURT

NOW COMES LORENZO VILLARREAL, ("hereinafter called Plaintiff"), complaining of and about ALAMO COLLEGES DISTRICT (hereinafter called "Defendant ACD"), and would respectfully show the Court the following:

### I.

### DISCOVER CONTROL PLAN

1. Plaintiff intends to conduct discovery under Level 3, pursuant to Rule 190.4 for the Texas Rules of Civil Procedure.

### II.

### SUMMARY

2. On or about August 5, 2020 Plaintiff, Lorenzo Villarreal filed an U.S. Equal Employment Opportunity Commission (hereinafter, "EEOC") Charge of Discrimination against Alamo Colleges District for discrimination and retaliation under the Title VII of the Civil Rights Act of 1964 and the Americans with Disability Act of 1990, as amended. Plaintiff will show that Defendant, ACD, is guilty of discriminatory practices and retaliation in violation of not only the Texas Labor Code but also in violation of Title VII of the Civil Rights Act of 1964 and the Americans with Disability Act of 1990, as amended, and further, in violation of the employment

rules, policies, procedures, and employment guidelines promulgated by the Alamo Colleges District.

## III.

### PARTIES

3. Plaintiff, Lorenzo Villarreal, is an individual, that is citizen of the State of Texas.

4. Defendant, Alamo Colleges District, a governmental or taxing entity in Texas, may be served with process by serving Dr. Mike Flores, Chancellor of the Alamo Colleges District, at 2222 N. Alamo St., San Antonio, TX 78215, under the authority of Texas Civil Practice & Remedies Code section 17.024(a).

## IV.

### JURISDICTION AND VENUE

5. LORENZO VILLARREAL asserts claims against Defendant for violations of the Texas Labor Code, and violations of Title VII of the Civil Rights Act of 1964, and the Americans with Disability Act of 1990, as amended, thereby invoking the jurisdiction of this Court.

6. On or about August 5, 2020, and within 300 days after Defendant terminated him, Plaintiff, LORENZO VILLARREAL timely filed a Charge of Discrimination against Defendant with the appropriate administrative agencies, including the United States Equal Employment Opportunity Commission (hereinafter "EEOC") and the Civil Rights Division of the Texas Workforce Commission (hereinafter "TWC"), identified as charge number 451-2020-03092

7. On or about March 19, 2021, LORENZO VILLARREAL received a DISMISSAL AND NOTICE OF RIGHTS (hereinafter "Notice") from the EEOC and TWC, and this cause was filed within ninety (90) days of the issues of the Notice.

8. By filing a Charge of Discrimination, receiving his Notice, and filing suit within 90 days of receiving his Notice, LORENZO VILLARREAL has complied with all conditions precedent


and exhausted all applicable administrative remedies required by the Texas Labor Code prior to filing suit.

9.      The Court additionally has subject matter jurisdiction because this civil action arises under the Constitution, laws, or treaties of the United States; specifically, Title VII of the Civil Rights Act of 1964 and the Americans with Disability Act of 1990, as amended, and said pleading is filed within the requisite 90 days.

<div style="text-align:center">

V.

**FACTS / FACTUAL ALLEGATIONS**

</div>

10.     Plaintiff, LORENZO VILLARREAL was an employee within the meaning of Title VII and under the ADA, and belongs to a class protected under the statute, namely an employee subject to the civil service laws of a state government, governmental agency, or political subdivision. Plaintiff's job title was Senior Advisor under the Workforce and Economic Development Department of Defendant ACD.

11.     The pattern of discrimination and retaliation was continuous and was ongoing from October 2017 until his termination in October 2019. Until October 2017, LORENZO VILLARREAL had developed a good working relationship and good friendships with most staff of the economic development workforce at the Westside Education and Training Center. However, that changed after a meeting request by LORENZO VILLARREAL that was held on October 16, 2017 with a co-worker, Cristy Kitchen, to clarify why Ms. Kitchen referred to LORENZO VILLARREAL's title as "Career Navigator." Ms. Melissa Sadler Nitu, their supervisor, was also present. During the meeting, Ms. Nitu stated that LORENZO VILLARREAL was hired as a Coordinator, but reflected that the slow processing in the HR department necessitated his title temporarily needed to be Senior Advisor. Ms. Nitu then went on to accuse LORENZO VILLARREAL of not fulfilling work duties and performance goals due to his back surgery/health issues. She also accuses LORENZO VILLARREAL of setting up contracts that ended up causing major issues with a vendor that was not paid. Ms. Nitu then proceeded to state that these were the reasons she wanted LORENZO VILLARREAL to learn the Career Navigator

position. MR. VILLARREAL contends this meeting he asked for, to clarify statements, then became an attempt to demote him, and subsequently as a pretext for retaliatory actions that, ultimately, led to his termination.

12. Due to continuous harassment and retaliatory attacks subsequent to the October 2017 meeting by Ms. Melissa Sadler Nitu, and others, LORENZO VILLARREAL worked in a hostile work environment that created a "constant fear of false accusations," stress and distractions.

13. On or about August 6, 2019 and September 27, 2019, Plaintiff complained to Human Resources for Defendant ACD about Hispanic and Black minority and older female students in his program being required to have their immunizations completed before they could be admitted into the Alamo Colleges Certified Nursing Assistant Program, while non-Hispanic and non-Black minority and older female students were not subjected to the same requirements. Plaintiff complained in good faith to the HR Department of Defendant ACD that the Defendant ACD's policies and the implementation of the policies was discrimination against Hispanic, Black and older students who were in his programs.

14. After the complaint was made to HR for Defendant ACD, Plaintiff went on FMLA leave to a physical, medical disability. Plaintiff returned to work on or about September 23, 2019. After he complained about the discriminatory policies of Defendant ACD, Plaintiff received a write-up on disciplinary grounds, which were unjustified, were a pretext, and were done purely in retaliation for the complaint he had lodged against Defendant ACD, and or the actions of various administrators for Defendant ACD.

15. After Plaintiff made the protected complaints to Human Resources, his supervisor retaliated against him by changing the terms and conditions of my employment, he was assigned much more work and his work was overly scrutinized. He was assigned to much smaller and dirtier office that was infested with cockroaches and rat droppings. He was required to make daily reports of completed work tasks and was placed under the supervision of Mr. Don Grabel. On or about October 10, 2019, Plaintiff was discharged.

16.     In the Memo dated October 10, 2019, under the Corrective Action Record, of the four actions mentioned, only one referred to a specific date of incident. On January 7, 2019 Mr. VILLARREAL was issued Step 3, Final Written Warning for refusing to meet with a supervisor or other agent of college management. The Corrective action noted that the meeting was postponed until January 7 due to the Holiday Break.

17. The other corrective action incidents listed were vague and, with supervisors and management denying LORENZO VILLARREAL's previous requests to investigate his improper demotion from Coordinator and denying his request for a copy of his personnel file to answer the complaints, and with the continued harassment and retaliation, Plaintiff's rights to due process were denied.

18.     Ms. Melissa Sadler Nitu one of the primary actors against the Plaintiff announced her resignation would take place just two days after Plaintiff's termination, which Plaintiff contends is an admission that one of plaintiff's supervisors had finally realized her ultimate retaliation by terminating the Plaintiff's employment with Workforce and Economic Development Department of the Alamo Colleges District.

19.     Plaintiff was discriminated and retaliated against based on the basis of his national origin (Hispanic) and for making protected complaints, in violation of Title VII of the Civil Rights Act of 1990, as amended. I also believe I was discriminated and retaliated against due to his disability in violation of the Americans with Disabilities Act of 1990, as amended.

## VI.

## **VIOLATIONS OF THE TEXAS LABOR CODE**

20.     Whenever LORENZO VILLARREAL pleads that Defendant ACD engaged in any act or omission, he also pleads that Defendant's officers, agents, servants, employees, or representatives, engaged in said act or omission within the course and scope of employment and with the full authorization or ratification of Defendant.

21. By and through his Original Petition, LORENZO VILLARREAL pleads a *prima facie* case of retaliation and contends:

   a. that he engaged in protected conduct and opposed unlawful conduct;
   b. that he was terminated; and
   c. a causal connection exists between his protected conduct and his termination.

## VII.

## FACTS OF DEFENDANT'S DISCRIMINATORY ACTIONS TAKEN AGAINST PLAINTIFF UNDER TITLE VII

22. . Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute and was employed by a governmental body, agency or political subdivision that is subject to the statute.

23. Defendant is an employer within the meaning of Title VII, is engaged in an industry affecting commerce, and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. The Defendant has more than five hundred employees.

24. Ms. Melissa Sadler Nitu, Ms. Cristy Kitchen, and Mr. Victor Ramirez, plaintiff's supervisors are employed by the defendant as supervisors in the Workforce and Economic Development Department.

25. Plaintiff's supervisors are empowered by defendant to take tangible employment actions against plaintiff. As senior supervisors, the defendant's employees exercised supervisory authority over plaintiff, to include but not limited to 1) the authority to fire plaintiff, 2) the authority to reassign plaintiff to a position with significantly different responsibilities. Defendant's employees ultimately did those very things by denying the plaintiff advancement, reassigning him to lesser positions, and creating a hostile work environment in an attempt to cause his resignation and which ultimately led to the termination of plaintiff.

26. Defendant used the following discriminatory employment practices, policies, and rules in violation of Title VII: Plaintiff's chain of command failed to abide not only by the defendant's own Human Resources Policy and Procedure but also dismissed other rules for hiring or employment actions. Although these practices, policies, and rules appear to be neutral, they serve to discriminate against the Plaintiff.

27. Defendant and defendant's employees created a hostile work environment through its discriminatory words and retaliatory actions towards plaintiff because of plaintiff's national origin and based upon his disability. This conduct was so severe that it altered the terms and conditions of plaintiff's employment and interfered with plaintiff's work performance and thereby created an intimidating, hostile, and offensive work environment.

28. Defendant is directly liable because it was negligent in discovering and remedying the discriminatory conduct. Defendant intentionally discriminated against plaintiff because of his national origin and retaliated against Plaintiff in violation of Title VII by Defendant, by taking away plaintiff's duties without any corrective or disciplinary written paperwork. Plaintiff opposed what he contended in good faith were discriminatory practices against the minority Hispanic, Minority Black, and older women in his program. Defendant was discriminatory in nature and intended to cause the plaintiff to resign or be terminated rather than continue to face additional harassment and discriminatory practices.

29. Defendant is strictly liable for defendant's employee's discriminatory conduct because defendant and defendant's employees took a tangible employment action against plaintiff that significantly changed plaintiff's employment status. This ultimately led to plaintiff being reassigned with significantly different responsibilities and plaintiff's benefits were significantly changed ultimately desiring plaintiff to resign or be subject to termination.

30. Defendant is vicariously liable for defendant's employee's discriminatory conduct. Defendant did not exercise reasonable care to prevent and promptly correct the discriminatory conduct, even though plaintiff took advantage of defendant's measures designed to prevent and correct discriminatory conduct.

C.   Retaliation

31   By and through his Amended Petition, LORENZO VILLARREAL pleads a *prima facie* case of retaliation and contends (1) that he engaged in protected conduct and opposed unlawful conduct; (2) that he was illegally investigated, and his duties altered; and (3) causal connection exists between his protected conduct and his demotion of duties and lack of promotion and eventual demotion.

32.   Plaintiff has asserted that he was qualified for the positions he held as a Coordinator, within the Workforce and Economic Development Department and that he was demoted from his position within the administration of Defendant ACD.

33.   Plaintiff has had countless adverse employment actions to include he was demoted from a position he was otherwise qualified for; and he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action.

34.   Other members outside of his protected class as disabled and Hispanic were treated more favorably even though they had less seniority were provided with substantially different requirements or supervision or discipline, thus creating more or better opportunities and ultimately another member outside of the protected class who received favorable treatment, less supervision, even though they had less educational credentials, less seniority, and less qualifications.

D.   Hostile Work Environment

35.   Defendant ACD created a hostile work environment in its words and actions of a supervisor, manager or coworker which negatively or severely impacted the plaintiff's work ability to complete his work. In order to establish a hostile work-environment claim, a plaintiff must prove five elements: (1) the employee belonged to a protected class; (2) the employee was subject to unwelcome harassment; (3) the harassment was based on [the protected class]; (4) the harassment affected a "term, condition, or privilege" of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. Id. (citing Shepherd v. Comptroller of Pub. Accounts of Tex., 168 F.3d 871, 873 (5th Cir. 1999) (footnote omitted)).

Here, in this cause, plaintiff is a Hispanic male and plaintiff was subject to unwelcome harassment and retaliation at the hands of Ms. Melissa Sadler Nitu, Ms. Cristy Kitchen, and Mr. Victor Ramirez. The harassment was caused his demotion and termination. The employer knew of the discriminatory action but failed to take action. Instead, employer, Alamo Colleges District hindered the due process by denying access to his employee file and declining investigations into his employment complaints.

## VIII.

Plaintiff was a disabled individual, and was denied reasonable accommodation of his disability, and suffered discrimination and retaliation by stricter discipline, demotion and changing and reducing his job duties.

## IX.

### DAMAGES

As a direct and proximate result of defendant's conduct, plaintiff suffered the following injuries and damages.

a. Plaintiff was terminated from employment resulting in lost pay and benefits;

b. Plaintiff was terminated from employment with defendant. Although plaintiff has diligently sought other employment, he has been unable to find a job at comparable pay. In addition, plaintiff has incurred expenses in seeking other employment and has had to pay for medical treatment that otherwise would have been covered by the health benefits plan offered by defendant.

c. Plaintiff suffered loss of his pension match made by ACD into his Teacher's Retirement System pension plan.

d. Plaintiff seeks compensation for all lost wages and benefits, including loss of Social Security or other retirement including TRS contributions and benefits. Reinstatement of plaintiff

in his previous position is impractical and unworkable. Therefore, plaintiff seeks an award of front pay and retirement benefits to compensate his applicable: up to the mandatory retirement age of sixty-five (65) years old;

   e. Plaintiff suffered mental anguish and emotional distress.

   f. Reasonable attorney's fees, costs, and expenses of this action, including expert witness costs;

   g Pre-judgment and post-judgment interest at the highest rates allowed by law;

   h. Plaintiff seeks damages in an amount that is within jurisdictional limits of court; and

   i. Such other and further relief, at law or in equity, as this Honorable Court may find proper.

## X.

### ATTORNEY FEES AND COSTS

Plaintiff is entitled to an award of attorney fees and costs.

## XI.

### PRAYER

For these reasons, plaintiff asks for judgment against defendant for the following:

   a. affirmative action to hire, reinstate, or promote plaintiff;

   b. back pay;

   c. front pay;

   d. compensatory damages;

   e. Punitive damages;

f. prejudgment interest on lost wages and benefits and post judgment interest on all sums, including attorney fees;

g. for reasonable attorney fees;

h. Costs of suit;

i. All other relief the Court deems appropriate.

Respectfully submitted,

*Law Offices of :*
DIAZ & JAKOB, PLLC
TETCO CENTER
1100 N E Loop 410, Suite 200
San Antonio, Texas 78209
Tel.: (210) 226-4500
Fax: (210) 226-4502
Email: JJJ@diazjakob.com

By: _____
JASON J. JAKOB
State Bar No.: 24042933       w/pemission
Attorney for Plaintiff, LORENZO
VILLARREAL

by
O. Rene Diaz
SBN 0584775

PLAINTIFF REQUESTS TRIAL BY JURY